UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYBER SOLUTIONS INTERNATIONAL, LLC,

       Plaintiff,

                                          File No.  1:13-CV-202

v.

                                          HON. ROBERT HOLMES BELL

PRIVA SECURITY CORPORATION, et al.,

       Defendants.

_____/

**OPINION**

This matter is before the Court on Plaintiff Cyber Solutions International, LLC's

complaint for declaratory and injunctive relief against Priva Security Corporation, Priva

Technologies, Inc., and Pro Marketing Sales, Inc.  (Dkt. No. 1.)  The subject matter of

Plaintiff's complaint concerns competing claims to the assets of Priva Technologies, Inc., a

bankruptcy debtor whose Chapter 11 Plan of Reorganization was recently confirmed by the

Bankruptcy Court for the Western District of Michigan.  *In re Priva Technologies, Inc.*, No.

11-12574 (Bankr. W.D. Mich. ) (Dkt. No. 221, 06/21/12 Order.)

Plaintiff's complaint raises numerous issues concerning the interpretation of the

Chapter 11 Reorganization Plan and the Design Service and Intellectual Property License

Agreement that was approved under the Plan.  Issues of construction arise in conjunction

with Plaintiff's claim that the License was not properly terminated,[1] and in conjunction with the competing claims of Cyber Solutions and Pro Marketing to the second generation of SKSIC technology created under the License.[2] Resolution of Plaintiff's complaint also raises questions concerning how best to protect unsecured creditors of the debtor.

A district court is authorized to refer any proceeding arising under Chapter 11 or related to a case under Chapter 11 to the bankruptcy court. 28 U.S.C. § 157(a). The bankruptcy court already conducted hearings in this matter, took testimony, made credibility determinations, and ultimately approved the Plan and the License. Under the terms of the Plan, the bankruptcy court retained jurisdiction over "the determination of all questions and

---

[1]A determination of whether the License was properly terminated requires a construction of, among other things, Section 5.1 of the License Agreement, which provides:

> During the term of this Agreement, Licensee agrees to **consider** Licensor as an exclusive service provider for all services, technological expertise and support relating to the Licensed Technology, including engineering, design, customization, and the like and as initially described in the attached Exhibit A . . . .

Agreement § 5.1 (emphasis added).

[2]Compare § 5.2 of the Licence Agreement which provides that "Any updates, modifications or improvements to the Licensed Technology developed by Licensor and paid for by Licensee shall be the property of Licensee. . . ," with § 5.2.4 of the Plan which provides that "Pro Marketing will retain it[s] Lien on the SKSIC IP . . . notwithstanding the Reorganized Debtor's entry into the License Agreement . . . ," and § 5.2.5 of thte Plan which provides that "Notwithstanding anything in the Pro Marketing Loan Documents to the contrary, the Reorganized Debtor will be authorized to enter into, and perform its obligations under, the License Agreement in its discretion, subject to any uses and restrictions specifically set forth in the Plan."

disputes regarding title to the assets of the estate, and all causes of action, controversies,

disputes, or conflicts, whether or not subject to an action pending as of the Confirmation

Date, between the Debtors or the Reorganized Debtor or any other party." Plan § 9.1.2.[3]  The

Plan was confirmed on June 20, 2012, and became effective on January 2, 2013. *In re Priva*,

No. 11-12574, Dkt. No. 287.  Priva went out of business within only a few months after the

---

[3]In Article IX of the Plan of Reorganization the bankruptcy court retained broad jurisdiction until the Plan was fully consummated for stated reasons and purposes, including:

9.1.2   the determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to an action pending as of the Confirmation Date, between the Debtors or the Reorganized Debtor or any other party;

. . .

9.1.5   the enforcement and interpretation of the terms and conditions of this Plan . . . .

9.1.6   the entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtors, the Reorganized Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary.

. . .

9.1.10 the entry of an  order determining the validity of any Lien;

9.1.11 the entry of an order determining the value of an allowed secured claim in accordance with § 506 of the bankruptcy code and in connection therewith, the validity of any lien . . . .

(Dkt. No. 1, Compl., Plan of Reorganization.)

Plan became effective.  On March 26, 2013, Official Committee of Unsecured Creditors of Priva Technologies, Inc. filed a motion for conversion to Chapter 7.  *In re Priva*, No. 11-12574, Dkt. No. 309.  The bankruptcy court is most familiar with the parties to this case, and also with the other parties who hold an interest in the assets at issue in this case.  In addition, the issues presented are within the particular expertise of the bankruptcy court.

It would take significant time for this Court to familiarize itself with the entire background of this case, and the Court would never be sure whether its conclusions were consistent with the understanding and intent of the bankruptcy judge who confirmed the Plan. The bankruptcy court has the expertise, resources, time, and personnel to attend to this matter and to clarify the rights and responsibilities of the parties vis-a-vis the SKSIC technology. The Court accordingly believes that referring this case back to the bankruptcy court for further proceedings is in the best interests of justice and judicial economy.

Because this case is being referred to the bankruptcy court, this Court is reluctant to involve itself any further in the dispute.  Counsel for Defendant has assured the Court that the property at issue is currently in a government-approved secure location.  The Court will accordingly withdraw the escrow order entered on March 20, 2013.  (Dkt. No. 21.)  The parties are admonished to communicate with each other regarding the location and security of the property until such time as they can bring this issue before the bankruptcy court. Because of the acrimony between the parties concerning the location and security of the

property, the bankruptcy court may want to consider this as one of its first orders of business

in this matter.

An order consistent with this opinion will be entered.


Dated: <u>March 27, 2013</u>                                    /s/ Robert Holmes Bell
                                                                                    ROBERT HOLMES BELL
                                                                                    UNITED STATES DISTRICT JUDGE